UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAKE DARNELL GRADY-WILKINS,

        Plaintiff,                      Case No. 1:23-cv-282

v.                                             Honorable Sally J. Berens

UNKNOWN NEWTON et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against one of the two defendants. Plaintiff's claims against Defendant Newton, however, remain.

## Discussion

### I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Thumb Correctional Facility (TCF) Lapeer, Lapeer County, Michigan. The events about which he complains, however, occurred at the Kent County Correctional Facility (the KCCF) while he was detained for proceedings on the charges that resulted in his present incarceration. Plaintiff sues Kent County Sheriff's Deputy Unknown Newton and the KCCF. Plaintiff alleges:

> September 8, 2021, I ate my lunch and waited for a deputy to arrive to my floor, M2M Kent County Correctional Facility to escort me to court. When Deputy

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

>Newton arrived in the elevator, myself and two others gave our identification cards to Deputy Newton. Deputy Newton then looked at all of our identification cards and said to me "Grady looks like you have a 'keep separate' in M3. Do not fight on the elevator." I then said okay to Deputy Newton. The elevator doors closed, we went up a floor to M3M. When the elevator doors opened, Deputy Newton stepped out and three people walked into sight. The last person of the three to walk to the elevator was my "keep separate" "Martin Ochoa" the person who became an informant in my criminal case. I instantly dropped my folder because I was scared for my life and Martin rushed on the elevator and punched me in my mouth. I grabbed him to prevent him from attacking me more than he already had and Deputy Newton yelled "stop fighting" and pointed his taser at me. I let Martin go and walked off the elevator, turned around, and watched Deputy Newton arrest Martin. Deputy Newton then yelled and told me to stand near a metal detector. That's when four deputies arrived out of the second elevator and arrested me and asked me did I need medical attention because I was bleeding. I say "yes." They put me in an elevator. We went down. The elevator doors opened and the deputies escorted me to a cell and uncuffed me. The nurse came, gave me wipes to clean my cut, and I waited in that cell until I went to court.

(Compl., ECF No. 1, PageID.3.)[2]

Plaintiff seeks $500,000.00 in damages from the KCCF and $250,000.00 from Deputy Newton.

## II. Request to Appoint Counsel

In Plaintiff's complaint he notes that he "need[s] a[n] attorney." (*Id.*) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the

---

[2] In this opinion, the Court corrects the spelling, capitalization, punctuation, and verb tense in quotations from Plaintiff's complaint.

4

issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.3) will, therefore, be denied.

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

5

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Section 1983 Claims against Defendant Newton

The specific constitutional right allegedly infringed by Defendant Newton depends, in part, on Plaintiff's status at the KCCF. Was he a pretrial detainee or a convicted prisoner? Plaintiff's allegations do not definitively answer that question. The publicly available records from the Kent County Circuit Court, however, suggest that he was a pretrial detainee.[3]

The circuit court records[4] indicate that Plaintiff was prosecuted in four separate criminal proceedings. In *People v. Grady-Wilkins*, Case No. 19-07804 (Kent Cnty. Cir. Ct.), Plaintiff entered a guilty plea to a charge of unlawful use of a motor vehicle. He was placed on probation under the Holmes Youthful Trainee Act, Mich. Comp. Laws § 762.16 *et seq*. He violated his probation and the court sentenced him to 90 days at the KCCF.

It appears that Plaintiff's probation violation(s) resulted in three other criminal prosecutions: *People v. Grady-Wilkins*, Case No. 20-07430-FH (Kent Cnty. Cir. Ct.), for

---

[3] "[I]t is well-settled that '[f]ederal courts may take judicial notice of proceedings in other courts of record[.]'" *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999) (quoting *Granader v. Public Bank*, 417 F.2d 75, 82–83 (6th Cir. 1969), *cert. denied*, 397 U.S. 1065 (1970)).

[4] *See* https://www.accesskent.com/CNSearch/appStart.action (select Criminal Case Search; input First Name "Jake," Last Name "Grady-Wilkins," Year of Birth "2002;" complete reCAPTCHA; select case number) (last visited May 7, 2023).

carjacking; *People v. Grady-Wilkins*, Case No. 20-07949 (Kent Cnty. Cir. Ct.), for conducting a criminal enterprise; and *People v. Grady-Wilkins*, Case No. 21-08422-FC (Kent Cnty Cir. Ct.), for carjacking and armed robbery. Plaintiff entered guilty pleas in the armed robbery and carjacking cases; the deal resulted in the dismissal of the criminal enterprise charges. He is presently serving concurrent sentences of 10 to 25 years' imprisonment for armed robbery and carjacking.

Reviewing all of the registers of actions for these cases indicates that Plaintiff had completed his sentence for the unlawful use of a motor vehicle at the time of the events described in the complaint. Accordingly, the Court concludes that Plaintiff was a pretrial detainee at that time.

In *Westmoreland v. Butler Cnty, Ky.*, 29 F.4th 721 (6th Cir. 2022), the Sixth Circuit explained the source and nature of the protection afforded to pretrial detainees under the constitution:

> The Eighth Amendment provides an inmate the right to be free from cruel and unusual punishment. U.S. Const. amend. VIII. The Supreme Court has established that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S .Ct. 1970, 128 L.Ed.2d 811 (1994) (citation omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834, 114 S. Ct. 1970. A prison official violates an inmate's rights only if the official is "deliberate[ly] indifferen[t] to inmate health or safety." *Id*. (internal quotation marks and citation omitted). A deliberate indifference claim under the Eighth Amendment has an objective and a subjective component. *Richmond v. Huq*, 885 F.3d 928, 937–38 (6th Cir. 2018). Under the objective component, "[f]or a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834, 114 S. Ct. 1970. The subjective component requires an inmate to show that the individual defendants (1) were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"; (2) actually drew the inference; and (3) consciously disregarded the risk. *Id*. at 837, 839, 114 S. Ct. 1970; *Mangum v. Repp*, 674 F. App'x 531, 537 (6th Cir. 2017).
> 
> The Due Process Clause of the Fourteenth Amendment provides the same protections to pretrial detainees. *See Richko v. Wayne Cnty., Mich*., 819 F.3d 907, 915 (6th Cir. 2016). This court has "historically analyzed Fourteenth Amendment

7

pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Richmond*, 885 F.3d at 937 (quoting *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)). Westmoreland argues, however, that a pretrial detainee's failure-to-protect claim should be governed by a test of objective unreasonableness because the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 192 L. Ed. 2d 416 (2015), eliminates the subjective element of a deliberate indifference claim.

In *Kingsley*, the Court held that, in an excessive-force claim, a pretrial detainee must show only that the officers' use of force was objectively unreasonable and need not show the officers were subjectively aware their use of force was unreasonable. 576 U.S. at 391–92, 135 S. Ct. 2466. In holding that the appropriate standard is objective, the Court reiterated the principle that pretrial detainees' constitutional status differs from that of convicted prisoners. *Id*. at 397–98, 400, 135 S. Ct. 2466. *Kingsley* did not, however, address whether an objective standard applies in other Fourteenth Amendment pretrial detainment contexts.

*Westmoreland*, 29 F.4th at 726–27. The *Westmoreland* court concluded that the *Kingsley* objective standard applies to "failure-to-protect" claims against individual officers. *Id*. at 728. The *Westmoreland* court adopted the Ninth Circuit's statement of the elements of such a claim:

(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

(2) Those conditions put the plaintiff at substantial risk of suffering serious harm;

(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

(4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Id*. at 728–29 (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)). Construing the complaint liberally, the Court concludes that Plaintiff's allegations suffice to state a Fourteenth Amendment "failure-to-protect" claim.

### B.  Section 1983 Claims Against the KCCF

Plaintiff sues the Kent County Correctional Facility. The correctional facility is a building, not an entity capable of being sued in its own right; a specific correctional facility is "not the proper

public entity for suit." *Ryan v. Corizon Health Care*, No. 1:13-cv-525, 2013 WL 5786934, at *7 (W.D. Mich. Oct. 28, 2013); *see also Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (stating that"[t]he McCracken County Jail is not a legal entity susceptible to suit."); *Cage v. Kent County Corr. Facility*, No. 96-1167, 1997 WL 225647, at *1 (6th Cir. May 1, 1997) (stating that "[t]he district court also properly found that the jail facility named as a defendant was not an entity subject to suit under § 1983."); *Belcher v. Ottawa County Adult Corr. Facility*, No. 1:09-cv-173, 2009 WL 1163412, at *2 (W.D. Mich. Apr. 28, 2009) (stating that "[t]he Ottawa County Adult Correctional Facility is a building, not an entity capable of being sued in its own right."). Plaintiff's claims against the KCCF, therefore, are properly dismissed.

Construing Plaintiff's *pro se* complaint with all required liberality, *Haines*, 404 U.S. at 520, the Court assumes that Plaintiff intended to sue Kent County. The Court directs the Clerk to substitute Kent County as a Defendant in the place of the KCCF.

But Kent County may not be held vicariously liable for the actions of its employees under Section 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, a county, regardless of the form of relief sought, is liable only when its official policy or custom causes the injury. *Connick*, 563 U.S. at 60; *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 32–33 (2010) (citing *Monell*, 436 U.S. at 694).

Plaintiff's complaint does not allege that Kent County operated pursuant to an unconstitutional policy or custom requiring jail officials to fail to protect inmates from threats from other inmates. To the contrary, Deputy Newton's reference to the fact that Plaintiff was to be kept separate from the attacking prisoner suggests that the county operated pursuant to a policy designed to protect inmates from such threats. Moreover, Plaintiff's complaint does not allege that

9

Kent County was responsible for any of the actions or inactions taken by Newton or that Newton's actions or inactions occurred as a result of a policy or custom approved by the county. Instead, it appears that Plaintiff contends that the county is liable solely because it employed Deputy Newton. That is not enough. *See Monell*, 436 U.S. at 691.

### C. State Law Claims

Plaintiff's allegations might also be liberally construed to include a claim that Defendants acted negligently—a state-law claim. Claims under Section 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Any assertion that Defendants violated state law, therefore, fails to state a claim under Section 1983.

Nonetheless, it is possible that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction, and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the

avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction with respect to Defendant Kent County as substitute for the KCCF. Accordingly, Plaintiff's state-law claims against Defendant Kent County will be dismissed without prejudice. Because the Section 1983 claim against Defendant Newton will go forward, however, the Court will exercise supplemental jurisdiction with regard to a negligence claim against Defendant Newton.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court directs the Clerk to substitute Defendant Kent County for the Kent County Correctional Facility. The Court determines that Plaintiff's Section 1983 claim against Kent County will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss without prejudice any state-law claims against Kent County because the Court declines to exercise supplemental jurisdiction over such claims. Plaintiff's claims against Defendant Newton remain in the case.

Dated:   May 11, 2023                                    /s/ Sally J. Berens
                                                                                                      SALLY J. BERENS
                                                                                                      United States Magistrate Judge